OPINION
{¶ 1} Appellant, the state of Ohio, appeals the decision of Butler County Area I Court, suppressing evidence of the results of field sobriety tests and finding that there was no probable cause to arrest defendant-appellee, Jason Way, for driving his vehicle while under the influence of alcohol. We affirm in part, reverse in part and remand for further proceedings.
 {¶ 2} On April 15, 2007, at approximately 2:35 a.m., Deputy Darron Rhodes, a *Page 2 
member of the Butler County Sheriff's Office, Road Patrol Division, observed Way commit several marked lane violations while driving his pick-up truck southbound on State Route 126. After following Way for a short distance, Deputy Rhodes initiated a traffic stop. Thereafter, as he obtained Way's driver's license and proof of insurance, Deputy Rhodes detected a smell of alcohol on Way's breath and noticed that he had bloodshot and glassy eyes. At that point, Deputy Rhodes ordered Way out of his vehicle to perform three standardized field sobriety tests; specifically, the horizontal gaze nystagmus test (HGN), the one-legged-stand test, and the walk-and-turn test. After he completed the field sobriety tests, Deputy Rhodes placed Way under arrest and transported him to the Butler County Sheriff's Office, where he later submitted to a breathalyzer test. Thereafter, Way was charged with driving under the influence of alcohol (OVI) in violation of R.C. 4511.19(A)(1)(a).
 {¶ 3} Before his trial, Way filed a motion to suppress challenging the admissibility of the breathalyzer test results, the three field sobriety test results, Deputy Rhodes' opinion regarding his sobriety, and any statements that he may have made to the police. Following an evidentiary hearing, the trial court granted Way's motion to suppress by finding Deputy Rhodes failed to administer the field sobriety tests in substantial compliance with the National Highway Traffic Safety Administration (NHTSA) standards, and that Deputy Rhodes did not have sufficient probable cause to arrest him for OVI. The state appealed the trial court's decision to grant Way's motion to suppress, raising three assignments of error.
 {¶ 4} Assignment of Error No. 1:
 {¶ 5} "THE TRIAL COURT ERRED IN ALLOWING APPELLEE TO RAISE A CHALLENGE TO THE RESULTS OF THE FIELD SOBRIETY TESTS FOR THE FIRST TIME AT THE HEARING WITH REGARD TO THE MOTION TO SUPPRESS."
 {¶ 6} In its first assignment of error, the state argues that Way's motion to suppress lacked sufficient particularity to place the state, and the court, on notice of the issues to be *Page 3 
decided at the suppression hearing. Specifically, the state argues that Way's motion to suppress was insufficient because it did not cite to the National Highway Traffic Safety Administration (NHTSA) standards, or any applicable statutory provisions, and therefore, the trial court erred by permitting Way to "orally raise" a challenge to the admissibility of the field sobriety test evidence for the first time at the suppression hearing. This argument lacks merit.
 {¶ 7} In filing a motion to suppress in a criminal proceeding, a defendant "shall state with particularity the grounds upon which it is made and shall set forth the relief or order sought." Crim. R. 47. This requires a defendant to "state the motion's legal and factual bases with sufficient particularity to place the prosecutor and the court on notice of the issues to be decided." State v. Wood, Clermont App. No. CA2007-12-115, 2008-Ohio-5422, ¶ 10, quoting State v. Shindler,70 Ohio St.3d 54, 1994-Ohio-452, paragraph one of the syllabus. After the defendant meets his burden by effectively placing the prosecutor and the court on sufficient notice of the issues to be determined, the burden then shifts to the state to show substantial compliance with the applicable standards. State v. Plunkett, Warren App. No. CA2007-01-012,2008-Ohio-1014, ¶ 11, citing City of Xenia v. Wallace (1988),37 Ohio St.3d 216, 220.
 {¶ 8} Further, although the burden shifts to the state, the extent of the state's burden of proof establishing substantial compliance "only extends to the level with which the defendant takes issue with the legality of the test." State v. Nicholson, Warren App. No. CA2003-10-106, 2004-Ohio-6666, ¶ 10. For example, if the defendant's motion to suppress raises issues in general terms, then the state is only required to show substantial compliance in general terms.Nicholson at ¶ 10; Plunkett at ¶ 12. As a result, the state's burden to show compliance in regards to a general allegation is slight, and requires only the amount of specificity as stated in the motion.Nicholson at ¶ 11. However, if the defendant's motion to suppress lacks the required particularity, the defendant may still provide some factual basis, *Page 4 
either during cross-examination or by conducting formal discovery, to support a claim that the standards were not followed in an effort to "raise the `slight burden'" placed on the state. Plunkett at ¶ 25-26, citing State v. Embry, Warren App. No. CA2003-11-110, 2004-Ohio-6324, ¶ 12.
 {¶ 9} In this case, Way's motion to suppress states, in pertinent part:
 {¶ 10} "Now comes the Defendant, by and through his Attorney * * * and moves the Court for an order to suppress the following: * * *
 {¶ 11} "2. The field sobriety test results * * *."
 {¶ 12} We find that Way's motion, although extremely succinct, is sufficient to place the state, and the court, on notice that he is making a general challenge to the admissibility of the field sobriety test evidence. See, e.g., Plunkett, 2008-Ohio-1014 at ¶ 18, 25-26; see, also, Wood, 2008-Ohio-5422; State v. Wyatt, Clermont App. No. CA2008-01-013, 2008-Ohio-5667. In fact, the trial court judge found, after reviewing Way's motion to suppress for the first time during the suppression hearing, the motion was sufficient to raise an issue as to whether the field sobriety tests were completed in substantial compliance with NHTSA standards as required by R.C. 4511.19(D)(4)(b). However, although we find Way's motion was sufficient to place the state and the court on notice of a general challenge to the field sobriety test results, it lacked sufficient particularity to raise the "slight burden" placed on the state to demonstrate substantial compliance with the NHTSA standards beyond mere general terms. See Plunkett.
Accordingly, we find the trial court did not err by permitting Way to make a general challenge to the admissibility of the field sobriety test evidence at the suppression hearing, and therefore, the state's first assignment of error is overruled.
 {¶ 13} Assignment of Error No. 2:
 {¶ 14} "THE TRIAL COURT ERRED IN GRANTING THE DEFENDANT-APPELLEE'S MOTION TO SUPPRESS THE RESULTS OF THE ONE LEG STAND AND WALK AND *Page 5 
TURN TESTS."
 {¶ 15} In its second assignment of error, the state argues that the one-legged-stand test and the walk-and-turn test were conducted in substantial compliance with the NHTSA standards, and therefore, the results of such tests should not be suppressed.[1] The state raises two issues with respect to the trial court's decision to suppress the results of the one-legged-stand test and the walk-and-turn test. Specifically, the state argues that the trial court erred in granting Way's motion to suppress because (1) the arresting deputy substantially complied with the NHTSA requirements even though he did not demonstrate the tests, and (2) the state provided sufficient evidence that the deputy substantially complied with the NHTSA standards even though he did not recite the test instructions verbatim. We agree.
 {¶ 16} Appellate review of a ruling on a motion to suppress evidence presents a mixed question of law and fact. State v. Long (1998),127 Ohio App.3d 329, 332. When considering a motion to suppress, the trial court assumes the role of the trier of fact, and therefore, is in the best position to resolve factual questions and evaluate witness credibility. State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. A reviewing court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Bryson
(2001), 142 Ohio App.3d 397, 402. The appellate court then determines as a matter of law, without deferring to the trial court's conclusions, whether the trial court applied the appropriate legal standard. Id.
 {¶ 17} In response to a motion to suppress regarding field sobriety test results, the state must show the requisite level of compliance with the accepted testing standards. State v. Schmitt, 101 Ohio St.3d 79,2004-Ohio-37, ¶ 9. The typical standards, as were used in this case, are those from the NHTSA. State v. Jimenez, Warren App. No. CA2006-01-005, 2007-Ohio-1658, ¶ 12. *Page 6 
Strict compliance with the NHTSA standards is not necessary, but instead, clear and convincing evidence of substantial compliance with the NHTSA standards is sufficient. R.C. 4511.19(D)(4)(b). Moreover, R.C. 4511.19 only requires the administration, not the demonstration, of field sobriety tests to be conducted in substantial compliance with the NHTSA standards. State v. Pearl, Lake App. No. 2006-L-082,2006-Ohio-6100, ¶ 14.
 {¶ 18} The state argues that the trial court erred by granting Way's motion to suppress the results of the one-legged-stand test and the walk-and-turn test because, even though Deputy Rhodes did not demonstrate the one-legged-stand test and a portion of the walk-and-turn test, the state still provided clear and convincing evidence of substantial compliance with NHTSA standards.
 {¶ 19} The NHTSA manual contains specific verbal instructions officers are taught to provide to the accused prior to conducting the one-legged-stand test and the walk-and-turn test, as well as calling for the officer to demonstrate certain portions of the tests. For example, the NHTSA manual, in regards to the one-legged-stand test, instructs the officer, after providing the accused with an appropriate verbal instruction, to demonstrate the one-leg stance by raising one leg approximately six inches off the ground and then pointing the foot outward.
 {¶ 20} In this case, the trial court found that Deputy Rhodes, after providing Way with verbal instructions, failed to demonstrate the one-legged-stand test and portions of the walk-and-turn test, including the appropriate stance and how to turn after taking the required nine heel-to-toe steps. As a result, the trial court found that Deputy Rhodes' failure to demonstrate the disputed field sobriety tests precluded the state from proving substantial compliance with the NHTSA standards by clear and convincing evidence. However, although we agree that Deputy Rhodes failed to demonstrate the disputed tests in their entirety, we find that Way was not prejudiced by the lack of demonstration in this case. *Page 7 
 {¶ 21} Initially, in regards to the one-legged-stand test, Deputy Rhodes' testimony indicates that Way, even without the benefit of a demonstration, was able to understand the verbal instructions and perform the test accordingly. Here, Deputy Rhodes testified that Way properly kept his hands down to his sides, held his foot up six inches, and counted upwards towards 30 as instructed. The only clues from the one-legged-stand test noted by Deputy Rhodes was Way's swaying back and forth and putting his foot down several times, neither of which could have been remedied had he been provided with a demonstration.
 {¶ 22} Next, in regards to the walk-and-turn test, the trial court found that portions of the test were not demonstrated; specifically, "the stance, arms at side, [and] the turn." However, the trial court's finding that Deputy Rhodes failed to demonstrate "the stance, [and] arms at side," is unsupported by the record. Here, Deputy Rhodes testified, after instructing Way to take nine heel-to-toe steps, that he "demonstrated that for him." Such a demonstration would inherently include Deputy Rhodes taking the appropriate stance and keeping his arms down at his side. As a result, we find the only portion of the walk-and-turn test that was not demonstrated to Way was the turn, which, according to Deputy Rhodes' testimony, was done correctly. Therefore, although Deputy Rhodes failed to demonstrate the turn, we find this omission was not prejudicial to Way.
 {¶ 23} Further, in granting Way's motion to suppress, the trial court also found that the state failed to demonstrate substantial compliance with the NHTSA standards because Deputy Rhodes' verbal instructions contained only 55 percent of the words found in the NHTSA one-legged-stand test instructions, and only 47 percent of the words found in the NHTSA walk-and-turn test instructions.
 {¶ 24} We take this opportunity to again remind the trial court that a law enforcement officer is not required to provide the accused with the NHTSA instructions verbatim. See Wood, 2008-Ohio-5422 at ¶ 20, 29;Nicholson, 2004-Ohio-6666 at ¶ 23. Instead, the *Page 8 
instructions provided may deviate from the quoted language found in the NHTSA manual so long as they are sufficient to apprise the accused of the manner in which he is to perform the test. Wood at ¶ 29;Nicholson at ¶ 23. In turn, a trial court, in an effort to find a lack of substantial compliance with the NHTSA standards, may not simply count the number of words found in the NHTSA manual and compare them to the testimony provided by the law enforcement officer at the suppression hearing. Wood at ¶ 29.
 {¶ 25} Based on our review of the record, it is clear that the verbal instructions provided by Deputy Rhodes were more than sufficient to apprise Way of the manner in which he was to perform the tests despite the absence of a portion of the quoted language from the NHTSA manual.[2] Deputy Rhodes' failure to provide Way with the exact language found in the NHTSA manual is immaterial. Id. Therefore, the trial court erred by conducting a word-counting analysis to support its finding of a lack of substantial compliance with the NHTSA standards, because, to hold otherwise would, in effect, re-impose the strict compliance standard in State v. Homan, 89 Ohio St.3d 421, 2000-Ohio-212, that was expressly overruled by the Ohio General Assembly with the enactment of R.C. 4511.19(D)(4)(b). See, e.g., Wood at ¶ 20-29; see, also, Brookpark v. Key, Cuyahoga App. No. 89612, 2008-Ohio-1811, ¶ 87. *Page 9 
 {¶ 26} Accordingly, we find that the state provided clear and convincing evidence of substantial compliance with the NHTSA standards. Therefore, the state's second assignment of error is sustained.
 {¶ 27} Assignment of Error No. 3:
 {¶ 28} "THE TRIAL COURT ERRED IN GRANTING THE DEFENDANT-APPELLEE'S MOTION TO SUPPRESS ON THE GROUND THAT THE STATE FAILED TO SHOW THAT THERE WAS PROBABLE CAUSE FOR APPELLEE'S ARREST."
 {¶ 29} In its third assignment of error, the state argues that the trial court erred by finding Way's arrest for OVI was not supported by sufficient probable cause. We agree.
 {¶ 30} Probable cause to arrest for OVI exists when, at the moment of arrest, the arresting officer had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, to cause a prudent person to believe the accused was driving under the influence of alcohol. Homan, 89 Ohio St.3d at 427; State v. Thomas, Warren App. No. CA2004-01-010, 2004-Ohio-4527, ¶ 15. The trial court makes this determination based on the totality of the surrounding circumstances.Homan at 427.
 {¶ 31} In this case, the trial court found, without considering the results of the one-legged-stand and walk-and-turn test or testimony regarding Way's performance during such tests, that the state failed to prove Deputy Rhodes had probable cause to arrest Way for OVI.
 {¶ 32} At the suppression hearing, and in regards to Way's performance of the field sobriety tests, Deputy Rhodes testified that Way swayed "back and forth like he was not able to balance," and that he put his foot down multiple times in an effort to steady himself during the one-legged-stand test. Further, Deputy Rhodes testified that Way could not keep his balance while listening to the instructions for the walk-and-turn test, and also failed to touch heel-to-toe. These observations were within the province of ordinary persons testifying as lay *Page 10 
witnesses, and therefore, are admissible evidence regarding whether Way appeared intoxicated, thus providing Deputy Rhodes with probable cause to arrest him for OVI. State v. Hammons, Warren App. No. CA2004-01-008,2005-Ohio-1409, ¶ 5, citing State v. Kirby, Butler App. No. CA2002-06-136, 2003-Ohio-2922, ¶ 17.
 {¶ 33} Furthermore, even without considering the field sobriety tests, Deputy Rhodes had sufficient probable cause to arrest Way for OVI. Deputy Rhodes initially testified that he observed Way go left of center on at least three occasions, as well as cross the "fault line * * * numerous times." Thereafter, Deputy Rhodes, upon approaching Way's vehicle, detected an odor of alcohol on Way's breath, and noticed that he had bloodshot and glassy eyes. These facts alone are sufficient to establish probable cause to arrest Way for OVI. See Hammons at ¶ 6;Homan, 89 Ohio St.3d at 427. As a result, we find that the trial court erred in failing to consider the totality of the circumstances surrounding Way's arrest and by concluding Way's arrest for OVI was not supported by probable cause. Accordingly, based on the totality of the circumstances, Deputy Rhodes had sufficient probable cause to arrest Way for OVI. Therefore, the state's third assignment of error is sustained.
 {¶ 34} In light of the foregoing, the trial court did not err by allowing Way to challenge the field sobriety tests during the suppression hearing. However, the trial court did err by granting Way's motion to suppress the results of the one-legged-stand and walk-and-turn tests and by finding Way's OVI arrest was not supported by probable cause. Accordingly, we reverse the decision of the trial court and remand the case for further proceedings in accordance with this opinion.
 {¶ 35} Judgment affirmed in part, reversed in part and remanded.
BRESSLER, P.J., and YOUNG, J., concur.
[1] The state does not appeal the trial court's decision to exclude the HGN test results and concedes that such test was not conducted in substantial compliance with the applicable requirements.
[2] {¶ a} During the suppression hearing, Deputy Rhodes testified that he gave the following instructions for the one-legged-stand test:
{¶ b} "I asked Mr. Way to place both hands down to his side. Keep both feet together. I advised Mr. Way that when he started the test he'd either choose the right or left leg, did not matter to me at that time. I advised him I wanted to either, whatever leg he chose, the right or left, I'd like him to raise his foot off the ground six inches pointing his toe forward. While pointing his toe forward I wanting (sic.) him to be looking at his toe counting out loud one thousand one, one thousand two, one thousand three and so until I either tell him to stop the test or until he gets to one thousand thirty. I asked Mr. Way if he understood the instructions of the test. He stated yes."
{¶ c} Deputy Rhodes also testified that he gave the following instructions for the walk-and-turn test:
{¶ d} "I advised Mr. Way stand with both feet down to his side, both feet together hands down to his side. I advised him that I then wanted him to place his right foot in front of his left foot. I advised him to stand in that * * * in that fashion until I was finished with the rest of the instructions to the test. I asked him if he understood. He said yes. During this I then advised Mr. Way that when I asked him to begin the test I would like him to take nine heel to toe steps while I demonstrated that for him. Starting with the number one all the way up to number nine. When he got to number nine I advised Mr. Way to keep his left foot planted. Take small steps with his right foot turning completely back around and bringing nine heel-to-toe steps starting off with number one coming back until he got to nine or the test was complete." *Page 1