**In re J.C.**

[Cite as *In re J.C.,* 173 Ohio App.3d 405, 2007-Ohio-5763.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 22125.

Decided Oct. 26, 2007.

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellant.

Glen H. Dewar, Public Defender, for appellee.

GRADY, Judge.

{¶ 1} This appeal is brought by the state pursuant to Juv.R. 22(F) and R.C. 2945.67(A) from an order of the juvenile court granting defendant J.C.'s motion to suppress evidence.

{¶ 2} J.C., who was then 14 years of age, was brought by police to the Dayton Public Safety Building on February 8, 2007, on suspicion of having committed a rape offense. J.C. was placed in a police interview room. His mother waited outside the room.

{¶ 3} After his mother's permission had been obtained, J.C. was interviewed by Dayton police detective William Swisher, who advised J.C. and his mother that J.C. was a suspect in a rape case involving an "unknown female." Swisher asked J.C. if he knew which female Swisher was talking about, and J.C. answered, "Yes." J.C. explained that he encountered the female while he was babysitting his niece or cousin, and that the female was asleep on a couch. When she awoke, they conversed.

{¶ 4} At that point, Detective Swisher interrupted J.C. and advised J.C. and his mother that he needed to advise J.C. of his *Miranda* rights. J.C.'s mother consented and left the room. Swisher then read the *Miranda* rights to J.C. from a printed form. J.C. indicated his understanding of those rights and agreed to waive them, signing at the bottom of the form. The interview continued for an additional 40 minutes, during which J.C. made further statements.

{¶ 5} J.C. was subsequently charged by a complaint filed in juvenile court with being a delinquent child in violation of R.C. 2152.02(F)(1), the basis of that charge being a violation of R.C. 2907.02(A)(1)(b), sexual conduct with a person who is less than 13 years of age and not the spouse of the offender. J.C. subsequently filed a Juv.R. 22(D)(3) motion to suppress any statements he made.

{¶ 6} The juvenile court granted the motion to suppress following a hearing. In its written decision, the court stated:

{¶ 7} "The Court finds that the Juvenile was interviewed while in custody. The detective testified that he did not read the Juvenile his *Miranda* rights before advising the Juvenile that he was a suspect in a rape case and then asking him if he knew which female he was talking about. It is clear to the Court that the detective's question was not normally attendant to arrest and custody when he asked the Juvenile if he knew of the female victim.

{¶ 8} "The Court finds that it is well settled law that an incriminating statement made by a defendant during a 'custodial interrogation' is subject to suppression unless *Miranda* warnings are given *before* the statement is solicited. Under these circumstances, the Court concludes that the interview was a custodial interrogation. Accordingly, the Court believes that the Juvenile was entitled to receive the *Miranda* warnings prior to being questioned. Therefore, the Court finds that all of the said Juvenile's statements were obtained in violation of his Fifth Amendment right against self-incrimination and should be suppressed.

{¶ 9} "With the above determinations, the Court hereby GRANTS the Motion to Suppress."

{¶ 10} The state filed a timely notice of appeal from the suppression order.

ASSIGNMENT OF ERROR

{¶ 11} "The juvenile court committed error when it suppressed all of J.C.'s statements without considering whether J.C.'s voluntary responses to pre-Miranda questioning rendered his subsequent waiver of Miranda rights and post-Miranda statements involuntary."

█ {¶ 12} The state concedes that J.C. was in custody when he was interviewed by Detective Swisher and that *Miranda* [1] warnings and waivers were therefore required before interrogation commenced. The state does not contend that the statements J.C. made in response to the questions Detective Swisher asked him before *Miranda* warnings were given are admissible, and we agree with the juvenile court that they are inadmissible for a lack of prior *Miranda*

---

1. *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

warnings. Rather, the state argues that the failure did not render J.C.'s subsequent post-*Miranda* statements likewise inadmissible, absent further findings that the trial court failed to make.

{¶ 13} The rule of *Miranda* has a prophylactic purpose: to avoid a suggestion of coercion arising from the custodial setting by showing that a defendant who made an inculpatory statement while in custody and in response to police interrogation had previously been made aware of his Fifth Amendment rights against self-incrimination, and that he waived those rights voluntarily. The showings create a presumption that the inculpatory statement was voluntary and therefore not a product of coercion prohibited by the Fifth Amendment. The presumption is nevertheless subject to rebuttal on a finding that a subsequent statement was the product of actual coercion or improper inducements. *State v. Petitjean* (2000), 140 Ohio App.3d 517, 748 N.E.2d 133.

{¶ 14} Failure to give *Miranda* warnings when required creates a presumption of compulsion that renders any inculpatory statement a defendant made subject to suppression on a motion filed by the defendant. However, when the suspect's initial inculpatory statement, though technically in violation of *Miranda*, was voluntary, there is no warrant for presuming a coercive effect with respect to subsequent statements obtained pursuant to a knowing and voluntary waiver following *Miranda* warnings. *Oregon v. Elstad* (1985), 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222. In *Missouri v. Seibert* (2004), 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643, the Supreme Court identified "a series of relevant facts that bear on whether *Miranda* warnings delivered midstream could be effective enough to accomplish their object: the completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the two statements, the timing and setting of the first and the second, the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first." 542 U.S. at 615, 124 S.Ct. 2601, 159 L.Ed.2d 643.

{¶ 15} On this record, the juvenile court erred when it presumed a coercive effect with respect to J.C.'s post-*Miranda* statements arising from the inculpatory statements he made before *Miranda* warnings were given and J.C. waived the rights explained to him. On remand, the court may suppress J.C.'s post-*Miranda* statements on account of his pre-*Miranda* interrogation, but only on findings that factors of the kind that *Seibert* identified rendered J.C.'s waiver of his *Miranda* rights ineffective.

{¶ 16} J.C. concedes that the court failed to make the inquiries *Seibert* suggests, but argues that the state waived any error because it failed to offer

evidence from which the court could have found that his pre-*Miranda* interrogation did not taint J.C.'s waiver of his *Miranda* rights. We do not agree.

{¶ 17} Once the state offered evidence that *Miranda* warnings were given and that J.C. waived the rights concerned, it became J.C.'s burden, as proponent of the suppression remedy, to demonstrate that his waiver was tainted by his pre-*Miranda* interrogation and therefore was ineffective to waive his rights against self-incrimination. The state was not required to show that the pre-*Miranda* interrogation did not taint the warnings or J.C.'s waiver. In any event, there is evidence from which the required findings may be made, and the court's error in not making them was not waived by either party.

{¶ 18} The assignment of error is sustained. The order from which the appeal is taken is reversed, and the cause is remanded for further proceedings.

Judgment reversed
and cause remanded.

DONOVAN and VALEN, JJ., concur.

ANTHONY VALEN, J., retired, of the Twelfth Appellate District, sitting by assignment.