[Cite as *State v. Marejka*, 2018-Ohio-2570.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 27662 |
| | : | |
| v. | : | Trial Court Case No. 2016-CR-1376 |
| | : | |
| JAQUAISE MAREJKA | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 29th day of June, 2018.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by SARAH E. HUTNIK, Atty. Reg. No. 0095900, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

JOHN S. PINARD, Atty. Reg. No. 0085567, 120 West Second Street, Suite 603, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant Jaquaise Marejka appeals from his conviction and sentence, following a plea of no contest, for rape. He contends that the trial court erred by denying his motion to suppress evidence of statements made to the police, because he was coerced into submitting to an interview and did not make a valid waiver of his rights.

{¶ 2} We first conclude that Marejka was not subjected to a custodial interrogation. We further conclude that the record does not support Marejka's claim of coercion. Finally, we conclude that the record demonstrates Marejka made a knowing, voluntary and intelligent waiver of his rights prior to speaking with the police. Accordingly, the judgment of the trial court is affirmed.

## I. Facts and Procedural History

{¶ 3} In November 2015, Dayton Police Detective Lindsey Delaney began an investigation regarding a 13-year-old who became pregnant when she was 12. The girl identified Marejka as the man who impregnated her. As part of her investigation, Delaney contacted Marejka's probation officer to arrange an interview with Marejka. On February 24, 2016, Marejka appeared in the Dayton Safety Building for an interview.

{¶ 4} Marejka was subsequently indicted on one count of rape (less than 13 years) in violation of R.C. 2907.02(A)(1)(b). He filed a motion to suppress statements made during the interview with Detective Delaney. After conducting a hearing, during which Marejka testified, the trial court denied the motion. Following negotiations with the State, Marejka entered a plea of no contest to one count of rape (force or threat of force) in

violation of R.C. 2907.02(A)(2).[1]   The parties stipulated that he would be sentenced to a mandatory ten-year prison term.   The trial court sentenced Marejka accordingly and also designated him as a Tier III Sex Offender/Child Victim Offender.

{¶ 5} Marejka appeals.

## II. Analysis

{¶ 6} Marejka's sole assignment of error states:

THE TRIAL COURT IMPROPERLY OVERRULED APPELLANT'S MOTION TO SUPPRESS WITH REGARDS TO MIRANDA.[2]

{¶ 7} Under his Assignment of Error, Marejka contends that the trial court erred in failing to suppress the statements he made to detectives.   In support, he claims that his statements were coerced and were made without him knowingly, intelligently and voluntarily waiving his rights.

{¶ 8} Appellate "review of a motion to suppress presents a mixed question of law and fact."   *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. As the trier of fact, a trial court is in the best position to weigh the evidence and to evaluate witness credibility.   *Id.*   Thus, an "appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence."   *Id.*, citing *State v. Fanning*,

---

[1] Both the waiver/plea form and the transcript of the plea hearing demonstrate that Marejka entered a no contest plea.   However, the termination entry incorrectly identified the plea as a guilty plea.

[2] Marejka's appellate brief also sets forth what he suggests is a "potential assignment of error" regarding his request to withdraw his plea.   However, as this argument is not assigned as error and as he concedes that there is no apparent error regarding the matter, we need not address the issue.

1 Ohio St.3d 19, 437 N.E.2d 583 (1982). Accepting the trial court's findings of fact as true, "the appellate court must then independently determine, without deference to the [trial court's legal] conclusion[s], whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist.1997).

{¶ 9} A suspect subjected to a custodial interrogation must be advised of his or her constitutional rights and make a knowing, intelligent and voluntary waiver of those rights before statements obtained during the interrogation will be deemed admissible at trial. *State v. Thomas*, 2d Dist. Montgomery No. 20643, 2005-Ohio-3064, ¶ 27, citing *Miranda v. Arizona*, 382 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). "The rule of *Miranda* has a prophylactic purpose: to avoid a suggestion of coercion arising from the custodial setting by showing that a defendant who made an inculpatory statement while in custody and in response to police interrogation had previously been made aware of his Fifth Amendment rights against self-incrimination, and that he waived those rights voluntarily." *In re J.C.*, 173 Ohio App. 3d 405, 2007-Ohio-5763, 878 N.E.2d 719, ¶ 13 (2d Dist.). These "showings create a presumption that the inculpatory statement was voluntary and therefore not a product of coercion prohibited by the Fifth Amendment." *Id.*

{¶ 10} "An individual is in custody when there has been a formal arrest or a restraint of freedom of movement such that a reasonable man would believe that he is under arrest." *State v. Wenzler*, 2d Dist. Greene No. 2003-CA-16, 2004-Ohio-1811, ¶ 15, citing *State v. Biros*, 78 Ohio St.3d 426, 440, 678 N.E.2d 891 (1997). Therefore, " 'the ultimate inquiry is simply whether there is a "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest.' " *Biros* at 440, quoting *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983),

quoting *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977) (Other citation omitted.)

{¶ 11} In this case, we do not find that the interview constituted a custodial interrogation. Although the interview occurred at the Safety Building, Marejka was not forced to appear for the interview. Rather, Marejka voluntarily met with Delaney. As importantly, at the beginning of the interview, Delaney informed Marejka that he did not have to talk to her, that he was free to leave, and that he could speak with an attorney. Marejka was not handcuffed and the door to the interview room was not locked. Delaney also told him that there were no charges filed against him. The interview lasted approximately thirty minutes.

{¶ 12} Based on these circumstances, a reasonable person in Marejka's position would not have believed he was under arrest or otherwise deprived of his freedom so as to amount to a custodial interrogation. Since there was not a custodial interrogation, *Miranda* warnings were not required.

{¶ 13} However, even if the interview had been custodial in nature, we note that Delaney did administer *Miranda* warnings to Marejka, and he indicated his willingness to waive his rights. Nonetheless, Marejka claims his statements were coerced because he was led to believe he would be arrested if he did not participate in the interview. He further claims that "he only completed the eighth grade, and that his lack of education clearly indicates that he may not have understood the rights he waived."

{¶ 14} A "suspect may effectively waive [his *Miranda*] rights * * * only if the waiver is made voluntarily, knowingly and intelligently." *State v. Dailey*, 53 Ohio St.3d 88, 91, 559 N.E.2d 459 (1990), citing *Miranda*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694

(1966). Thus, a court may recognize the validity of a waiver of *Miranda* rights only if it finds that (1) "the relinquishment of the right[s] [was] voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception[,]" and (2) the person had "a full awareness of both the nature of the right[s] being abandoned and the consequences of the decision to abandon [them]." *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986).

{¶ 15} We turn first to the issue of whether the record supports a finding that Marejka was coerced into submitting to the interview. At the suppression hearing, Marejka testified that Delaney called his aunt's cell phone in November 2015, at which time Delaney stated that if Marejka failed to appear for an interview, a warrant for his arrest would be issued. He also testified that his probation officer made the same statement to him. Marejka's testimony indicates that the conversation with his probation officer occurred on the same day as the interview, February 24, 2016, almost three months after he claimed Delaney threatened him with an arrest warrant.

{¶ 16} Delaney, conversely, testified that she contacted Marejka through his probation officer. She testified that she called the probation officer and informed her that she wished to interview Marejka with regard to a sexual assault. She did not testify, on either direct or cross, that she ever contacted Marejka's aunt. Nor did she testify that she threatened to issue a warrant if he failed to appear. Further, there is no evidence that a warrant was ever issued. And the fact that Marejka did not appear for an interview during the three months after Delaney allegedly called Marejka's aunt indicates that Marejka did not feel any sense of urgency regarding the need to submit to an interview.

{¶ 17} Regardless of what his probation officer may have said to him, the

videotape of the interview establishes that Delaney informed Marejka he did not have to speak with her, that he had the right to consult an attorney, and that he was free to leave without speaking with her. The interview lasted less than thirty minutes, and there is no evidence that Marejka was deprived of food, water, bathroom breaks or in any other way subjected to abusive practices. Marejka was not handcuffed during the interview and the door was not locked. Thus, based upon this record, we cannot conclude that the police coerced Marejka into submitting to the interview, or that he was subjected to coercion during the interview.

{¶ 18} Marejka also claims that his lack of education hindered his ability to waive his rights. In support, he states that he did not know what DNA is or why Delaney swabbed his cheek. However, at the suppression hearing, Marejka admitted he has two children and that his paternity of at least one child was established by DNA testing for which he had undergone a mouth swab. He also testified that he had not been read his *Miranda* rights in the past. However, during cross-examination, he admitted that he informed Delaney that he had previously been read his rights.

{¶ 19} With regard to schooling, he testified that he only completed eighth grade. However, the videotape confirms that he informed Delaney he completed the ninth grade. Marejka also testified that he had difficulty in school, but he admitted that he was not in any special classes. He further admitted that he had attempted to take courses after dropping out of school, but that he was unable to find time to complete these courses. Further, the videotape does not reveal that Marejka had any difficulty reading or that he was unable to understand Delaney's statements and questions.

{¶ 20} The trial court, as the trier of fact, was free to credit Delaney's testimony

over that of Marejka. Indeed, the record indicates that Marejka's testimony was less than credible.

{¶ 21} Finally, we note that the videotape reveals no issues regarding waiver. Delaney had Marejka complete a standard pre-interview form informing him of his rights. Marejka read out loud the first right on the form. The record shows he was able to read the statement without any apparent difficulty. Delaney asked him if he understood the right, and Marejka indicated that he did. Delany then read the remaining rights to Marejka who indicated that he understood each one. He also placed his initials by each of the enumerated rights. When asked about his education, Marejka indicated that he could read and that he had completed the ninth grade. Marejka also indicated that he had been read his rights in the past. Delaney explained the word "coercion" to Marejka and he indicated that he understood. At the completion of the interview, Delaney asked Marejka for his consent to take a DNA sample. Marejka agreed and signed a consent form.

{¶ 22} We conclude that the record demonstrates that Marejka knowingly, intelligently and voluntarily waived his *Miranda* rights, as the totality of the circumstances indicates that his waiver was made with full awareness of the nature of the rights that he was waiving and the consequences thereof. The totality of the circumstances also indicates that Marejka's waiver was not the product of intimidation, coercion or deception. We further conclude that Marejka's statements to Delaney confessing his sexual intercourse with the minor were voluntarily made. Accordingly, the sole assignment of error is overruled.

### III. Conclusion

{¶ 23} Marejka's sole assignment of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and FROELICH, J., concur.

Copies mailed to:

Mathias H. Heck, Jr.
Sarah E. Hutnik
John S. Pinard
Hon. Gregory F. Singer